**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CURT ECKSTROM**<br><br>        **v.**<br><br>**COMMUNITY EDUCATION CENTERS, INC., et al.** | **CIVIL ACTION**<br><br>**NO. 19-782** |

## MEMORANDUM RE: MOTION TO DISMISS

Baylson, J.                                                                                    **August 12, 2019**

## I.     Introduction

        This action arises from injuries that Plaintiff, Curt Eckstrom, allegedly suffered while

serving a state sentence at Luzerne Treatment Center ("Luzerne").  Plaintiff's Complaint (ECF 1,

"Compl.") alleges six Counts against Defendants Community Education Centers, Inc. ("CEC"),

doing business as Luzerne; The GEO Group, Inc. ("GEO"); Diversified Health Associates, Inc.

("DHA"), also doing business as Luzerne; Viviam Agostini, the Director of Luzerne; Tanya

Moore, Plaintiff's counselor at Luzerne; the Pennsylvania Department of Corrections ("DOC");

ABC Companies I–X[1]; and John Does I–V[2]:

1.  **Count I**: Disability discrimination under Title II of the Americans with Disabilities Act,
    42 U.S.C. § 12131 ("ADA");

2.  **Count II**: Discrimination under § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a);

3.  **Count III**: Violations of the Eighth and Fourteenth Amendments to the United States
    Constitution under 42 U.S.C. § 1983;

---

[1] The Complaint designates legal entities not yet identified who acted in concert with the named
Defendants as "ABC Companies I–X."  (Id. ¶ 8.)  The Complaint alleges that Plaintiff will insert
their true names when identified.  (Id.)
[2] The Complaint identifies John Does I–V as agents of Defendants CEC, GEO, DHA, the DOC,
ABC Companies I–X, and/or Agostini who were employed as counselors, supervisors, managers,
deputy directors, or other personnel at Luzerne.  (Id. ¶ 9.)

4. **Count IV**: Disability discrimination under the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA");

5. **Count V**: Reckless disregard of safety in violation of state law; and

6. **Count VI**: State law negligence.

Plaintiff seeks compensatory and punitive damages as well as attorneys' fees and costs. Presently before this Court is the Motion to Dismiss Counts I, II, III, and IV of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants CEC, DHA, GEO, Agostini, and Moore (together, "Moving Defendants.").[3] For the reasons discussed below, Moving Defendants' Motion is GRANTED.

## II. Factual Background

Taking Plaintiff's allegations as true, the factual background is as follows. Plaintiff resides in Philadelphia, Pennsylvania. (Compl. ¶ 1.) Defendant CEC is a corporation incorporated in Delaware with its principal place of business in New Jersey. (Id. ¶ 2.) Defendant GEO, a successor corporation of CEC, is both incorporated in and has its principal place of business in Florida. (Id. ¶ 3.) Defendant DHA is incorporated in and has its principal place of business in Pennsylvania. (Id. ¶ 4.) Defendant Agostini, an agent of CEC, GEO, and DHA, was the Director of Luzerne. (Id. ¶¶ 5, 11.) Defendant Moore, who was also an agent of CEC, GEO, and DHA, was employed as a counselor at Luzerne. (Id. ¶ 6.)

Plaintiff, whose right leg was amputated in 1994, served a state sentence in Pennsylvania. (Id. ¶ 14.) As a condition of his sentence, Plaintiff was confined as a resident at Luzerne beginning on or about February 21, 2017. (Id. ¶ 17.) On that date, Plaintiff was required to use a non-handicapped-accessible shower. (Id. ¶ 20.) The shower contained "extremely slippery" tile

---

[3] The title of the Motion references both Rules 12(b)(1) and 12(b)(6). However, Moving Defendants only seek dismissal under Rule 12(b)(6).

flooring and was not equipped with a flexible, removable shower head; grab bars; or a shower chair. (Id.) Afterward, Plaintiff told Moore that the available showers were not sufficient to accommodate his disability and were unsafe. (Id. ¶ 21.) Plaintiff requested a handicapped-accessible shower, but Defendants refused his request. (Id. ¶¶ 23, 25.) Though Luzerne did have a handicapped-accessible shower, the shower did not have running water or a shower head, and it was used to store chairs. (Id. ¶ 23.)

As a result, on February 23, 2017, Plaintiff was again forced to shower in a non-handicapped-accessible shower. (Id. ¶ 26.) The shower was too small for Plaintiff to use his crutches, so he had to stand on one leg with nothing to hold onto while he showered. (Id. ¶ 27.) Plaintiff slipped and fell, sustaining injuries to his left shoulder, knee, and lower extremity. (Id. ¶ 28.) Plaintiff remained on the shower floor for approximately fifteen minutes before another inmate saw him and summoned a nurse. (Id. ¶ 29.) Plaintiff was immediately taken to the Emergency Department at Hahnemann University Hospital, where an MRI revealed a complete tear and retraction of Plaintiff's left rotator cuff tendon. (Id. ¶ 30.)

Four days later, on February 27, Plaintiff was discharged from the hospital with instructions to follow up with an orthopedic surgeon. (Id. ¶ 31.) Due to the nature of Plaintiff's injuries, which include complete tear and retraction of his supraspinatus tendon, muscle atrophy, partial tear of the subscapularis tendon, and tendonitis, Plaintiff must undergo shoulder replacement surgery. (Id. ¶¶ 33, 39.)

## III.    Procedural History

On February 22, 2019, Plaintiff filed the Complaint in this case against Defendants CEC, GEO, DHA, Agostini, Moore, the DOC, ABC Companies I–X, and John Does I–V (ECF 1). This action was originally also filed under Civil Action No. 19-1998. Upon a Motion filed by Moving

Defendants, the Court consolidated the cases and ordered the parties to submit all further filings under Civil Action No. 19-782 (ECF 21, 22).

On May 14, 2019, Moving Defendants filed the instant Motion to Dismiss Plaintiff's federal claims and state disability discrimination claim–Counts I, II, III, and IV of the Complaint (ECF 9, "Mot."). Plaintiff filed a Response in opposition on June 17, 2019 (ECF 15, "Resp.").

Defendant DOC filed a Partial Motion to Dismiss Counts III, IV, V, and VI against it on May 31, 2019 (ECF 12), which the Court granted as unopposed on July 22, 2019 (ECF 20, 23). As a result, the only claims remaining against the DOC are the ADA and Rehabilitation Act claims–Counts I and II of the Complaint. The DOC subsequently filed an Answer to the Complaint on August 5, 2019 (ECF 25).

## IV.    Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556

n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she will provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## V. Discussion

### A. Parties' Contentions

#### i. Moving Defendants' Motion to Dismiss

Moving Defendants contend that Plaintiff's claims under the ADA and the Rehabilitation Act (Counts I and II) must be dismissed because Moving Defendants are individuals and private corporations, not "public entities" subject to liability under these statutes. (Mot. at 5–6.) As to Plaintiff's § 1983 claim (Count III), Moving Defendants argue that Plaintiff has failed to allege a policy or custom that caused a constitutional violation, as required to demonstrate municipal liability. (Id. at 7–9.) Rather, Moving Defendants contend that the Complaint contains conclusory allegations that Moving Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. (Id.) To the extent that Plaintiff alleges violations of his due process and equal protection rights under the Fourteenth Amendment, Moving Defendants aver that Plaintiff has not advanced any allegations to substantiate these claims. (Id. at 13–14.)

Moving Defendants further contend that Plaintiff has not alleged any facts from which this Court may reasonably infer that Agostini or Moore is individually liable under § 1983. (Id. at 9–12.) In the absence of such allegations, Moving Defendants argue that CEC, DHA, and GEO

cannot be held liable under § 1983.  (Id.)  Moving Defendants also contend that Agostini and Moore are entitled to qualified immunity from liability under § 1983.  (Id. at 14–15.)

Turning to Plaintiff's state law claims, Moving Defendants argue that Plaintiff's disability discrimination claim under the PHRA (Count IV) is barred by the statute of limitations because Plaintiff failed to file a timely complaint with the Pennsylvania Human Relations Commission ("PHRC") within 180 days.  (Id. at 15.)  As Plaintiff has failed to adequately state any federal claims, Moving Defendants contend, this Court should decline to exercise supplemental jurisdiction over the existing state law claims (Counts V and VI).  (Id. at 15–16.)

### ii.     Plaintiff's Response

In response, Plaintiff argues that the Complaint plausibly alleges ADA and Rehabilitation Act claims (Counts I and II) against CEC, GEO, and DHA because they act as "public entities" and receive federal funding.  (Resp. at 8–10.)  Plaintiff does not respond to Moving Defendants' contention that Moore and Agostini are not liable under these statutes.

As to Plaintiff's § 1983 (Count III), Plaintiff argues that the Complaint alleges sufficient facts demonstrating that Moving Defendants acted with deliberate indifference to his Eighth and Fourteenth Amendment rights.  (Id. at 10–12, 15–16.)  Similarly, Plaintiff seeks to refute Moving Defendants' contention that the Complaint does not allege any facts to support a § 1983 claim against Moore and Agostini in their individual capacities.  Specifically, Plaintiff cites allegations in the Complaint referring to "all defendants," as well as to Moore and Agostini specifically.  (Id. at 13–15.)  According to Plaintiff, because the Complaint plausibly alleges that Agostini and Moore violated his constitutional rights, they are not entitled to qualified immunity.  (Id. at 17.)

Plaintiff next argues that the state law claims (Counts IV, V, and VI) should not be dismissed, but Plaintiff does not provide a reason.  (Id. at 18.)  Plaintiff does not respond to Moving Defendants' argument that Plaintiff's PHRA claim (Count IV) is time-barred.

## B.    Analysis

### i.    ADA and Rehabilitation Act Claims (Counts I and II)

As noted above, Plaintiff alleges that Moving Defendants violated Title II of the ADA and the Rehabilitation Act by denying him access to a handicapped-accessible shower.  Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act "prohibits discrimination against handicapped persons in any program or activity receiving federal financial assistance."  U.S. Dep't of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597, 599 (1986).  The ADA and the Rehabilitation Act are "to be interpreted consistently" and "have the same standard for determination of liability." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012).

Under either statute, only "public entities" may be held liable.  Matthews v. Pa. Dep't of Corr., 613 F. App'x 163, 169 (3d Cir. 2015).  "State prisons fall squarely within the definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'"  Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B)); see also Furgess v. Pa. Dep't of Corr., --- F.3d ----, 2019 WL 3720871, at *2 n.8 (3d Cir. Aug. 8, 2019) (noting that state prisons are subject to the ADA and Rehabilitation Act).  The Third Circuit has held that neither state officers in their individual capacities, nor private corporations, are "public entities."  Matthews, 613 F. App'x at 169–70 (affirming the dismissal of a former state prisoner's ADA and Rehabilitation Act claims

against corrections officers, medical professionals, and a private medical provider that contracted with a correctional facility).

Here, Moving Defendants argue that Counts I and II must be dismissed because these statutes do not permit liability against individuals or private corporations. (Mot. at 5–7.) Plaintiff does not raise any arguments as to Moore and Agostini, the individual Defendants. As to CEC, GEO, and DHA, the corporate Defendants, Plaintiff seeks to distinguish Matthews. Plaintiff contends that unlike the private medical provider that contracted with the DOC in Matthews, CEC, GEO, and DHA are "much more akin" to the DOC itself because they were "contracted agents" of the DOC. (Resp. at 8–9.) In short, Plaintiff argues that CEC, GEO, and DHA are effectively public entities. (Id.) Plaintiff does not cite any judicial authority in support of this proposition.

The Court finds Plaintiff's argument to be unavailing. The Third Circuit stated in Matthews that "a private corporation is not a public entity merely because it contracts with a public entity to provide some service." Matthews, 613 F. App'x at 169 (quoting Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010)). Though Plaintiff seeks to argue that CEC, DHA, and GEO are "public entities," the Eleventh Circuit, in an opinion cited by the Third Circuit with approval, specifically held that "[s]ince GEO is such a private corporation, . . . GEO is not a public entity subject to liability under Title II of the ADA." Edison, 604 F.3d at 1310; see also Matthews, 613 F. App'x at 170 ("[W]e agree with the Court of Appeals for the Eleventh Circuit . . . ." (citing Edison, 604 F.3d at 1310)). While Matthews is a non-precedential opinion, the parties have not cited, nor is this Court aware of, any precedential judicial decisions to the contrary. Therefore, Plaintiff's ADA and Rehabilitation Act claims against Moving Defendants will be dismissed with

prejudice, as any amendment would be futile.[4]  See Grayson v. Mayview State Hosp., 293 F.3d

103, 108 (3d Cir. 2002) (stating that a district court may dismiss an action with prejudice when

leave to amend would be futile).

### ii.       Section 1983 Claim (Count III)

Plaintiff alleges that Moving Defendants acted with deliberate indifference to Plaintiff's

constitutional rights under the Eighth and Fourteenth Amendments by failing to provide him with

a handicapped-accessible shower.  (See Compl. ¶¶ 60–64.)  Plaintiff asserts his constitutional

claims pursuant to § 1983, alleging that Moving Defendants are liable under a municipal liability

theory, and that Agostini and Moore are liable in their individual capacities.  Moving Defendants

advance several reasons why Count III must be dismissed: (1) Plaintiff has not adequately pleaded

facts demonstrating a constitutional violation or a municipal policy or custom; (2) Plaintiff has

failed to allege that Agostini and Moore were personally involved in any alleged constitutional

violations; and (3) Agostini and Moore are entitled to qualified immunity.  (Mot. at 7–15.)  The

Court considers these arguments in turn.

### a.  Municipal Liability Claim Against CEC, GEO, DHA, and Agostini and Moore in Their Official Capacities

The Court addresses Plaintiff's § 1983 claim under the standard for liability established in

the seminal case of Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).

Monell held that "a municipality cannot be held liable under § 1983 on a *respondeat superior*

theory."  Id. at 691; see also A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Detention Ctr., 372 F.3d

572, 580 (3d Cir. 2004) ("A suit against a governmental official in . . . her official capacity is

_____

[4] The Court notes, however, that the dismissal of Counts I and II as to Moving Defendants does
not leave Plaintiff without a remedy under the ADA or Rehabilitation Act.  Plaintiff also brings
Counts I and II against the DOC, and the DOC has not moved to dismiss these claims.  See
Matthews, 613 F. App'x at 169 (holding that a former state prisoner stated ADA and
Rehabilitation Act claims against the DOC).

treated as a suit against the governmental entity itself."). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

As a result, to state a § 1983 claim, "a plaintiff must allege (1) a constitutional violation by a state actor, (2) that was caused by a municipal policy or custom." Wichterman v. City of Phila., No. 16-5796, 2017 WL 1374528, at *2 (E.D. Pa. Apr. 17, 2017) (DuBois, J.) (citing Monell, 436 U.S. at 694). The theory of municipal liability applies to "private companies performing municipal functions." Smith v. Cmty. Educ. Ctrs., Inc., No. 18-5299, 2019 WL 2089997, at *2 (E.D. Pa. May 10, 2019) (Baylson, J.); see, e.g., Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 578 (3d Cir. 2003) (applying Monell to an action against "a private company that provides health care services to . . . inmates"); Short v. Adams, No. 17-4544, 2019 WL 331679, at *3 n.2 (E.D. Pa. Jan. 25, 2019) (Pappert, J.) (concluding that GEO was a state actor for purposes of § 1983); Cloyd v. Del. Cty., No. 14-4833, 2015 WL 5302736, at *2 (E.D. Pa. Sept. 10, 2015) (Baylson, J.) (treating CEC as an entity subject to Monell liability).

The Third Circuit has instructed that when evaluating a § 1983 claim, courts "must first 'identify the exact contours of the underlying right said to have been violated' in order to determine 'whether [the plaintiff] has alleged a deprivation of a constitutional right at all.'" Natale, 318 F.3d at 581 (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)). "If so, the analysis then shifts to a determination of whether the state actor[s] . . . can be held liable for that violation." Natale, 318 F.3d at 581.

### i. Constitutional Violations

Plaintiff's § 1983 claim rests on the Eighth and Fourteenth Amendments. Plaintiff alleges that Moving Defendants, acting under color of state law, violated his Eighth Amendment right to

cruel and unusual punishment, as well as his Fourteenth Amendment rights to due process and equal protection. (Compl. ¶ 60.)

### 1. Conditions of Confinement Claim Under the Eighth and Fourteenth Amendments

While Plaintiff alleges separate violations of his Eighth and Fourteenth Amendment rights, in actions based on conditions of confinement, "the protections afforded by the Eighth Amendment against Federal governmental interference are applied against the states through the substantive component of the Fourteenth Amendment due process clause." Evans v. Rozum, No. 07-230J, 2008 WL 5068963, at *8 n.7 (W.D. Pa. 2008). As "[t]he standards under the Eighth Amendment and the standards under the Fourteenth Amendment are fundamentally identical," the Court addresses Plaintiff's Eighth and Fourteenth Amendment claims based on the conditions of his confinement together. Id.; see also Natale, 318 F.3d at 581–82 (noting that the same standard may be applied to evaluate inadequate medical care claims under the Eighth and Fourteenth Amendments).

To state a constitutional claim based on conditions of confinement, an inmate must first allege that the "deprivation is 'sufficiently serious'" such that "the inmate has been deprived of the 'minimal civilized measure of life's necessities.'" Fortune v. Hamberger, 379 F. App'x 116, 122 (3d Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Second, the inmate must plausibly allege that the prison official "ha[d] a sufficiently culpable state of mind." Farmer, 511 U.S. at 834. "In prison conditions cases, 'that state of mind is one of 'deliberate indifference' to inmate health or safety.'" Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001) (quoting Farmer, 511 U.S. at 834). A prison official acts with deliberate indifference by "recklessly disregard[ing] a substantial risk of serious harm." Matthews, 613 F. App'x at 170 (quoting Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009)). "[T]he official[s] must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Matthews, 613 F. App'x at 170 (alterations in original) (quoting Farmer, 511 U.S. at 837).

The Court concludes that Plaintiff has failed to sufficiently allege that the conditions of his confinement violated his constitutional rights. Plaintiff alleges that he was deprived of access to handicapped-accessible showers on February 21, 2017, when he arrived at Luzerne, and on February 23, 2017. (See Compl. ¶¶ 18–19, 24, 28.) Plaintiff makes no allegations about whether he returned to Luzerne after he was discharged from the hospital on February 27, or, if he returned, whether Plaintiff was granted access to handicapped-accessible showers during the remainder of his time at Luzerne. The absence of such allegations is fatal to Plaintiff's claim because the Third Circuit has "emphasi[zed] . . . conditions' time duration as critical to the constitutional analysis." Toomer v. Camden Cty. Corr. Facility, No. 17-cv-0197 (JBS-AMD), 2017 WL 2483700, at *8 (D.N.J. June 8, 2017) (collecting cases); see also Foreman v. Bureau of Prisons, No. 06-1274, 2007 WL 108457, at *4 (3d Cir. Jan. 16, 2007) (discussing cases where the failure to provide shower chairs to disabled inmates for several months was found to be unconstitutional).

This Court notes that district judges in this Circuit have concluded that "a sufficiently serious deprivation occurred when a prison failed to provide disabled inmates with accessible showers." Schreane v. Holt, No. 3:CV-11-0613, 2012 WL 1952242, at *11 (M.D. Pa. 2012) (citing Muhammad v. Dep't of Corr., 645 F. Supp. 2d 299, 317 (D.N.J. 2008), aff'd, 396 F. App'x 789 (3d Cir. 2010)). However, the parties have failed to cite, nor is this Court aware of, any precedential judicial decisions suggesting that a prison's failure to provide a disabled inmate with access to a handicapped-accessible shower within two days is "sufficiently serious" to state an Eighth Amendment claim.

Rather, judges in this Circuit have determined that such deprivations were "sufficiently serious" when they lasted for months, not days. Compare Fortune, 379 F. App'x at 122 (holding that the alleged denial of adequate showers and exercise for fifteen days was not "sufficiently serious"), and Rogers v. N.J. Dep't of Corr., No. 15-7005 (JBS-JS), 2016 WL 128142, at *10–11 (D.N.J. Jan. 12, 2016) (concluding that the plaintiff did not plausibly plead a constitutional violation based on the ten-day period that he was denied access to handicapped-accessible showers), with Muhammad, 645 F. Supp. 2d at 317 (concluding that depriving an inmate of reasonable access to handicapped-accessible restroom facilities for five months was "sufficiently serious" to state an Eighth Amendment claim). As Plaintiff has failed to adequately plead that he suffered a "sufficiently serious" deprivation, the Court must dismiss Plaintiff's conditions of confinement claim under § 1983, but the Court will do so without prejudice.

### 2. Fourteenth Amendment Equal Protection Claim

Plaintiff also alleges that Moving Defendants' failure to grant Plaintiff's request for a handicapped-accessible shower violated his equal protection rights under the Fourteenth Amendment. (Compl. ¶ 60.) Moving Defendants argue that Plaintiff cannot plausibly allege a constitutional violation based on the Equal Protection Clause because the Complaint does not allege that Plaintiff was treated differently from other inmates or that any decision about access to handicapped-accessible showers was related to discrimination. (Mot. at 14.)

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In general, a plaintiff bringing a § 1983 claim based on a violation of the Equal Protection Clause must allege that a state actor discriminated against him because of his membership in a "protected class." Smith v. McClendon, No. 14-6358, 2015 WL 2079689, at *5 (E.D. Pa. May 5, 2015) (Slomsky, J.). "[T]he Supreme Court has held that the disabled are not a

suspect class for purposes of an equal protection challenge." Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 (3d Cir. 2007) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).

Where a plaintiff brings an equal protection claim based on his disability, as in this case, the plaintiff may proceed under a "class of one" theory. See Smith, 2015 WL 2079689, at *5 (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). To state an equal protection claim based on a "class of one" theory, "[a plaintiff] [must] allege[] that []he [was] intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." Vill. of Willowbrook, 528 U.S. at 564; Pressley v. Pa. Dep't of Corr., 365 F. App'x 329, 331–32 (3d Cir. 2010). Individuals are "similarly situated" "when they are alike 'in all relevant aspects.'" Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). At the pleading stage, "[the plaintiff] must allege facts sufficient to make plausible the existence of such similarly situated parties." Perano v. Twp. of Tilden, 423 F. App'x 234, 238 (3d Cir. 2011).

Here, Plaintiff argues that the Complaint states an equal protection claim by alleging that Moving Defendants prevented him from "enjoying access to the same services and facilities provided to other inmates on account of his disability." (Resp. at 16) (quoting Compl. ¶ 68.) This conclusory allegation is not sufficient to sustain an equal protection claim. Plaintiff's allegation that he was treated differently from "other inmates" does not allow the Court to draw the reasonable inference that inmates "similarly situated" to Plaintiff were treated differently. Therefore, Plaintiff does not state a valid § 1983 claim under the Equal Protection Clause.

### ii. Policy or Custom

Even assuming that Plaintiff had plausibly alleged constitutional violations, Plaintiff's § 1983 municipal liability claim against Moving Defendants still falls short because Plaintiff has failed to plausibly allege a municipal "policy or custom."

### 1. Legal Rules

To succeed on a <u>Monell</u> claim, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." <u>McTernan v. City of York</u>, 564 F.3d 636, 658 (3d Cir. 2009); <u>see also</u> <u>Smith</u>, 2019 WL 2089997, at *2 ("To state a plausible <u>Monell</u> claim, Plaintiff must identify a policy or custom, identify the alleged violation of the plaintiff's constitutional rights, and establish a causal link between the policy or custom and the plaintiff's injury."). A plaintiff establishes the existence of a policy by alleging that "a decisionmaker possess[ing] final authority . . . issue[d] an official proclamation, policy, or edict." <u>Mulholland v. Gov't Cty. of Berks</u>, 706 F.3d 227, 237 (3d Cir. 2013) (alteration in original) (quoting <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom is a practice that is "'so permanent and well-settled' as to virtually constitute law." <u>Mulholland</u>, 706 F.3d at 237 (quoting <u>Andrews</u>, 895 F.2d at 1480). Custom, in particular, "requires proof of knowledge and acquiescence by the decisionmaker." <u>McTernan</u>, 564 F.3d at 658. "A complaint that simply alleges that a plaintiff's rights were violated due to the government's policy of ignoring such rights is not sufficient." <u>Deems v. Phillips</u>, No. 18-2035, 2018 WL 6574184, at *2 (E.D. Pa. Dec. 12, 2018) (Baylson, J.); <u>see, e.g.</u>, <u>LeBeau v. Raith</u>, No. 17-38, 2017 WL 2264639, at *7 (E.D. Pa. May 24, 2017) (Pratter, J.) (dismissing the plaintiff's <u>Monell</u> claim against CEC where the plaintiff's allegation that correctional facility employees ignored her complaints about her detention over several days did not raise an inference of a municipal policy or custom).

Alternatively, a plaintiff may allege a "policy or custom" based on a municipality's "failure to train" employees. A municipality's alleged "failure to train its employees in a relevant respect" may be "thought of as a [municipal] 'policy or custom'" only where the failure "evidences a 'deliberate indifference'" to constitutional rights. City of Canton v. Harris, 489 U.S. 378, 388, 389, 392 (1989). Generally, "a pattern of similar constitutional violations is . . . required to show deliberate indifference in the failure-to-train context." Peters v. Cmty. Educ. Ctrs., Inc., No. 11-CV-850, 2014 WL 981557, at *5 (E.D. Pa. Mar. 13, 2014) (Baylson, J.).

Where no such pattern is presented, failure to train liability is available in a "narrow range of circumstances" reflecting the municipality's "deliberate indifference to the highly predictable consequence, namely, violations of constitutional rights." Connick v. Thompson, 563 U.S. 51, 63 (2011) (quoting Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409 (1997)). Whether such circumstances exist "depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" Thomas v. Cumberland Cty., 749 F.3d 217, 223–24 (3d Cir. 2014) (alteration in original) (quoting Bryan Cty., 520 U.S. at 409).

In addition to deliberate indifference, "the [municipality's] decisions must be the 'moving force' behind an actual constitutional violation." Grazier ex rel. White v. City of Phila., 328 F.3d 120, 124–25 (3d Cir. 2003) (quoting City of Canton, 489 U.S. at 389); see also Peters, 2014 WL 981557, at *6 (noting that a plaintiff "must identify a particular failure in a training program that is 'closely related to the ultimate injury'" (quoting City of Canton, 489 U.S. at 391)). To establish such causation, a plaintiff must allege that "the injury would have been avoided had the employee been trained under a program that was not deficient in the identified respect[.]" City of Canton, 489 U.S. at 391; cf. Wood v. Williams, 568 F. App'x 100, 104–06 (3d Cir. 2014) (affirming

dismissal of a failure to train claim where the complaint did not allege facts showing a specific policy or custom, how it allowed the constitutional violation to occur, identify the policymaker or decisionmaker, or show prior notice through a pattern of similar constitutional violations).

### 2. Application

In this case, the Complaint alleges that Moving Defendants have a policy or custom of delaying or refusing disabled inmates' access to handicapped-accessible showers and of failing to train employees to provide such reasonable accommodations. Specifically, Plaintiff alleges that: (1) CEC, GEO, DHA, and Agostini had a "policy, practice, and custom" of refusing or delaying reasonable accommodations for inmates' physical disabilities; (2) CEC, GEO, DHA, and Agostini's "policies, practices, and/or customs" of refusing or delaying reasonable accommodations for disabled inmates caused "individual defendants"[5] to violate Plaintiff's constitutional rights; (3) CEC, GEO, DHA, and Agostini acted with deliberate indifference by failing to develop or implement "policies, practices, [or] procedures" to ensure that disabled inmates received proper accommodations; (4) CEC, GEO, DHA, and Agostini were deliberately indifferent to the need for "training supervision, investigation, monitoring, or discipline with respect to the provision of accommodations" for disabled inmates; and (5) Luzerne had a shower designated for handicapped inmates, but Moving Defendants used the shower for storage. (Compl. ¶¶ 23, 44, 61–63.)

Moving Defendants argue that Plaintiff's conclusory allegations cannot withstand dismissal. (See Mot. at 8–9.) This Court agrees. While the Complaint alleges that Luzerne had a handicapped-accessible shower that was not made available to disabled inmates, Plaintiff fails to

---

[5] The Complaint does not define "individual defendants." Though the Complaint identifies Agostini separately from "individual defendants," the Court may reasonable construe "individual defendants" to refer to both Agostini and Moore.

allege conduct by a municipal decisionmaker, as required to state a valid <u>Monell</u> claim.  <u>See</u>

<u>McTernan</u>, 564 F.3d at 659 (affirming the dismissal of a <u>Monell</u> claim where the plaintiff "d[id]

not adequately plead a custom or policy, or a link between the challenged restriction and a

municipal decisionmaker").  The Complaint alleges that between February 21 and February 23,

2017, Plaintiff informed Moore that the available showers were unsafe for Plaintiff because of his

disability.  (Compl. ¶ 21.)  Plaintiff alleges that "defendants intentionally refused" Plaintiff's

request for a handicapped-accessible shower, which caused the injuries he sustained on February

23.  (<u>Id.</u> ¶¶ 22, 24, 26.)  Plaintiff's allegations that "defendants" refused Plaintiff's request, without

additional particularity, do not support the reasonable inference that any municipal decisionmaker,

such as CEC, directed the restrictions or participated in formulating a policy or custom to deny

disabled inmates handicapped-accessible showers.

Plaintiff also fails to adequately plead a policy or custom on a failure to train theory.

Plaintiff does not allege that Moving Defendants exhibited a pattern of denying disabled inmates

handicapped-accessible showers.  Rather, Plaintiff alleges that he was forced to shower in a non-

handicapped-accessible shower on two occasions: on February 21, 2017 and February 23, 2017.

<u>See</u> <u>Douris-Schweiker</u>, No. Civ.A. 02-CV-1749, 2003 WL 22533701, at *6–7 (E.D. Pa. Oct. 21,

2003) (Baylson, J.) (concluding that evidence reflecting two occasions of misconduct did not

establish a pattern of violations under § 1983).  Even viewing the facts in the light most favorable

to Plaintiff, as the Court must at this stage, Plaintiff has not alleged that constitutional violations

were the "highly predictable consequence" of any identified, inadequate training program.  <u>See</u>

<u>Connick</u>, 563 U.S. at 409.  Plaintiff's sole allegation that his constitutional rights were violated by

the deliberate indifference of CEC, GEO, DHA, and Agostini to the need for training, without any

factual specificity, is not sufficient to withstand dismissal.  <u>See</u> <u>Deems</u>, 2018 WL 6574184, at *2.

Therefore, the Court will dismiss Plaintiff's § 1983 municipal liability claim against Moving Defendants without prejudice.

### b. Claim Against Agostini and Moore in Their Individual Capacities

Government officials, such as Agostini and Moore, may also be held liable under § 1983 in their individual capacities.[6] "Individual, or personal, capacity suits seek to impose personal liability upon a government official for actions [s]he takes under the color of state law." Short, 2019 WL 331679, at *5 (citation and internal quotation marks omitted). To state a § 1983 claim against Agostini and Moore in their individual capacities, Plaintiff must plausibly plead their "personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id. Such allegations "must be made with appropriate particularity." Id.

Here, Plaintiff alleges that between February 21 and February 23, 2017, Plaintiff informed Moore that "the available showers were not sufficient to accommodate his disability and were unsafe," and that Plaintiff "requested that defendants accommodate his disability." (Compl. ¶¶ 21–22.) Plaintiff alleges that "defendants intentionally refused his request." (Id. ¶ 22.) These allegations are not sufficiently specific to permit any reasonable inference that Agostini and Moore were personally involved in the decision to restrict Plaintiff's access to handicapped-accessible showers. Plaintiff's allegation that "defendants" refused to make a handicapped-accessible shower available to him, without any further specificity, is not made with "appropriate particularity" to

---

[6] The Court notes that Moving Defendants and Plaintiff raise the issue of supervisory liability with respect to Agostini. (See Mot. at 11; Resp. at 11–12.) However, because the Complaint makes no allegations about Agostini's role as a supervisor as it relates to Plaintiff, the Court does not reach any conclusions on this issue.

hold Agostini and Moore liable. In the absence of such allegations, Plaintiff's claim cannot withstand dismissal. See Short, 2019 WL 331679, at *6. The Court will dismiss Plaintiff's § 1983 claim against Agostini and Moore in their individual capacities without prejudice.

### c. Qualified Immunity

Moving Defendants argue that Agostini and Moore are also protected from liability under § 1983 because they are entitled to qualified immunity. (Mot. at 14–15.) The doctrine of qualified immunity "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Behrens v. Pelletier, 516 U.S. 299, 305 (1996) (alterations in original) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

As set forth above, the Court has concluded that Plaintiff's § 1983 claim will be dismissed without prejudice, and with leave to amend. In view of the fact that the Court is providing Plaintiff with the opportunity to file an amended Complaint, the Court does not reach any conclusions on the issue of qualified immunity at this time.

### iii. PHRA Claim (Count IV)

Turning to Plaintiff's disability discrimination claim under the PHRA, Moving Defendants argue that this claim is barred by the statute of limitations because Plaintiff failed to file a claim with the PHRC within 180 days, as required by the PHRA. (Mot. at 15.) Plaintiff does not offer any arguments in response.

In support of their position, Moving Defendants cite only one case, Vincent v. Fuller Co., 616 A.2d 969 (Pa. 1992), which involved employment discrimination. Moving Defendants cite no judicial authority supporting their contention that a plaintiff must file a complaint with the PHRC in the prisoner civil rights context.

Nevertheless, as Plaintiff has failed to address this argument in the Response, the Court exercises its discretion to dismiss Count IV as unopposed under Local Rule of Civil Procedure 7.1(c).  See Celestial Cmty. Dev. Corp. v. City of Phila., 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012) (Gardner, J.) ("[P]laintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."); see, e.g., Langweiler v. Borough of Newtown, No. 10-3210, 2011 WL 1809264, at *3 (E.D. Pa. May 12, 2011) (Baylson, J.) (dismissing the § 1983 claims that the plaintiff did not address in the response to the motion to dismiss).  Therefore, the Court will dismiss Count IV without prejudice.

## VI.    Conclusion

Moving Defendants' Motion to Dismiss will be granted, with prejudice, as to Plaintiff's ADA and Rehabilitation Act claims (Counts I and II).  The Motion will be granted, without prejudice, and with leave to amend, as to Plaintiff's § 1983 claim (Count III) and PHRA claim (Count IV).  The Court retains jurisdiction over Plaintiff's remaining state law claims (Counts V and VI).

An appropriate Order follows.

O:\CIVIL 19\19-782 Eckstrom v Community Education Centers\19cv782 Memo re MTD 08122019.docx